IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| TOY STYLES, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-11-3759 |
| TRIPLE CROWN PUBLICATIONS, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Toy Styles sued Triple Crown Publications, LLC ("TC Ohio"), Triple Crown Productions, LLC ("TC Nevada"), and Vickie Stringer (collectively, the "Defendants") for breach of contract and other claims. For the following reasons, the Defendants' amended motion to dismiss will be granted.

I. Background[1]

Styles is an author, screenwriter, and movie producer who lives in Baltimore County, Maryland. Compl. ¶¶ 1, 7. Stringer is a literary agent who lives in Ohio and is the sole owner of TC Ohio and TC Nevada. *Id.* ¶¶ 4, 8. At all relevant times, TC Ohio was an Ohio limited liability company ("LLC") with its

---

[1] On a motion to dismiss for improper venue, "the facts must be viewed as the plaintiff most strongly can plead them," and "all inferences must be drawn in favor of the plaintiff." *Silo Point II LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008) (internal quotation marks omitted).

principal place of business in Ohio, and TC Nevada was a Nevada LLC with its principal place of business in Nevada. *Id.* ¶¶ 2-3.[2]

In 2005 and 2006, Styles and Stringer executed two author-publisher agreements (the "Agreements") whereby TC Ohio agreed to publish three of Styles's books. Compl. ¶¶ 11-14. Styles assigned TC Ohio her rights to the books during the copyright terms, and TC Ohio agreed to pay her royalties. *Id.* ¶¶ 15, 18-19. The Agreements contained a bankruptcy provision, which provided that "[i]f . . . [TC Ohio] liquidates its business for any cause whatsoever, [Styles] may terminate this Agreement by written notice and thereupon all rights granted by h[er] hereunder shall revert to h[er]." *Id.*, Ex. 1 at 8 (¶ 26(e)), Ex. 2 at 8 (¶ 26(e)). The Agreements also contained the following arbitration clause: "[a]ny controversy arising under [the] Agreement[s] shall be submitted to arbitration before the American Arbitration Association [the "AAA"] in Columbus, Ohio[.]" *Id.*, Ex. 1 at 8 (¶ 28), Ex. 2 at 8 (¶ 28). The Agreements were governed by Ohio law. *Id.*, Ex. 1 at 8 (¶ 29), Ex. 2 at 8 (¶ 29).

On June 15, 2007, TC Ohio gave Styles a royalty check for $7069, which bounced. Compl. ¶ 21. On June 23, 2007, Styles called and emailed Stringer, but Stringer "was unresponsive and

---

[2] TC Ohio was dissolved in June 2010, and TC Nevada is not in good standing. Compl. ¶¶ 41, 44; *id.*, Ex. 5.

2

never submitted funds to rectify the situation." *Id.* ¶ 22.

On January 11, 2010, Styles received a deficiency notice from the Internal Revenue Service (the "IRS"), which stated that TC Ohio had claimed to have paid Styles $36,974 in 2007. Compl. ¶ 26. On January 21, 2010, Styles gave the IRS a statement of her actual earnings, and the IRS released Styles from any further obligation. *Id.* ¶ 27.

On April 4, 2010, TC Ohio assigned the rights to Styles's books to TC Nevada. Compl. ¶ 40; *id.*, Ex. 4.[3]

On May 4, 2010, TC Ohio sent Styles three royalty checks, totaling $2108. Compl. ¶ 30. The checks were back-dated to December 16, 2009, and bounced. *Id.* On May 5, 2010, Styles received a check for $2108, which bounced. *Id.* ¶ 31. On June 14, 2010, TC Ohio was formally dissolved. *Id.* ¶ 44; *see also* ECF No. 18, Ex. A. On December 8, 2010, TC Ohio sent Styles a royalty check for $1595, which bounced. Compl. ¶ 35.

On December 29, 2011, Styles sued for breach of contract,

---

[3] In a September 30, 2011 letter to Styles, Stringer explained that "the company [had] moved and as such [was] required to dissolve the OHIO business, while opening the NEVADA business simultaneously, and officially assigning those rights to the appropriate business entity." Compl., Ex. 4 (capitalization in original). The Agreements permitted assignment by TC Ohio. Compl. ¶ 16; *id.*, Ex. 1 at 6 (¶ 15(b)), Ex. 2 at 6 (¶ 15(b)). Styles alleges that the transfer was "ineffective," because "[t]he assignment papers that Ms. Stringer claims evidence this alleged transfer only claimed that Ms. Stringer assigned whatever rights she had in Ms. Styles['s] Works to TC Nevada," when Stringer "did not have any rights to Ms. Styles'[s] Works." Compl. ¶¶ 42-43.

3

fraudulent and negligent misrepresentation, and a declaration that she owns her literary works. ECF No. 1.[4]

On January 19, 2012, Stringer--purporting to represent herself, TC Ohio, and TC Nevada--moved to dismiss, arguing that the Court lacked personal jurisdiction over all the Defendants; Styles was required to arbitrate her claims; and venue was improper. ECF No. 4.[5] On February 2, 2012, Styles opposed the motion, arguing, *inter alia*, that Stringer "is not an attorney, and thus, has no authority to speak for the other Defendants." ECF No. 5 at 2. On February 21, 2012, Stringer filed a reply as "Attorney for the Defendants" but did not address the argument that she lacked authority to represent anyone but herself. ECF No. 8.

On February 23, 2012, Styles wrote the Court to restate her concern that Stringer "should not be allowed to act as an attorney on behalf of the other Defendants." ECF No. 6. On February 24, 2012, the Court informed Stringer that "[a]ll parties other than individuals must be represented by counsel," and ordered her to inform the Court, by March 2, 2012, of the bars to which she had been admitted. ECF No. 7 (*citing* Local

---

[4] Styles alleged breach of contract against TC Ohio, and fraudulent and negligent misrepresentation against Stringer and TC Ohio; she sought a declaratory judgment against all the Defendants. *See* Compl.

[5] Stringer moved alternatively to transfer venue. ECF No. 4.

4

Rule 101.1(a) (D. Md. 2011)).

On March 1, 2012, Dipo Akin-Deko, Esquire, entered an appearance as counsel for all the Defendants,[6] and moved to amend the motion to dismiss. ECF No. 9.[7] On March 8, 2012, Styles opposed the motion to amend. ECF No. 11. On March 21, 2012, the Defendants replied. ECF No. 12. On March 27, 2012, Styles moved to supplement her opposition to the motion to amend. ECF No. 13. On April 3, 2012, the Defendants opposed the motion to supplement. ECF No. 14. On April 12, 2012, Styles filed a reply. ECF No. 15.

On May 30, 2012, the Court granted the Defendants' motion to amend the motion to dismiss; denied as moot the Defendants' initial motion to dismiss; and denied Styles's motion to supplement, because the proposed exhibit was irrelevant to the Defendants' motion to amend their motion to dismiss. See ECF Nos. 16, 17. On June 12, 2012, Styles opposed the Defendants' amended motion to dismiss. ECF No. 18. On June 27, 2012, the Defendants replied. ECF No. 19.

---

[6] ECF No. 10. Although the notice of appearance states that Akin-Deko represents only Stringer and TC Ohio, it was docketed as a notice of appearance "on behalf of [a]ll Defendants." See docket.

[7] The Defendants moved for leave "to file a proper motion to dismiss," and attached a motion captioned "Defendants['] Motion to Dismiss for Lack of Jurisdiction[,] or in the Alternative to Compel Arbitration[,] [and] Failure to State a Claim Upon Which Relief Can Be Granted." See ECF No. 9-3.

II. Analysis

   A. Legal Standard

   Although no Federal Rule of Civil Procedure expressly addresses motions to dismiss or stay pending arbitration, the U.S. Supreme Court has described arbitration clauses as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). In *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006), the Fourth Circuit held that a motion to dismiss based on a forum-selection clause should be treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Id.* at 550. The Fourth Circuit has since cited *Sucampo* with approval in considering under Rule 12(b)(3) a motion to dismiss based on an arbitration provision. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 & n.9 (4th Cir. 2012).

   "[W]hen venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679-80 (D. Md. 2010). In considering the motion, the court must view the facts "as the plaintiff most strongly can plead them," and "all inferences must be drawn in favor of the plaintiff." *Silo Point II LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807,

6

809 (D. Md. 2008) (internal quotation marks omitted).

B. The Amended Motion to Dismiss

The amended motion to dismiss asserts three bases for relief: (1) the arbitration provision divests this Court of "jurisdiction" over the case; (2) Styles's claims are time-barred; and (3) Stringer cannot be sued in her personal capacity because Styles "has not sufficiently pled a piercing of the corporate veil." See generally ECF No. 9-3 at 3-8. The Defendants alternatively move to compel arbitration or transfer venue. See id. at 1.[8] Styles argues that the contracts have been terminated; the Defendants lack "standing" to enforce the arbitration provisions; "Maryland law has long recognized that an acknowledgement of a debt . . . removes the [statute-of-limitations] bar"; and Stringer is personally liable for her own fraudulent acts and those committed on behalf of TC Ohio after its dissolution. ECF No. 18 at 6-7, 14-15. Styles

---

[8] In support of their initial motion, the Defendants principally argued that the case should be dismissed for lack of personal jurisdiction. See ECF No. 4-1 at 2-6. Page one of the amended motion characterizes the motion as one to dismiss "for the lack of personal jurisdiction or in the alternative to compel arbitration, improper venue and alternatively to transfer venue pursuant to 28 U.S.C. §§ 1404(a) and 1406[,] and for failure to state a claim upon which relief can be granted." ECF No. 9-3 at 1. "Additionally[,] Defendant files this motion as a special appearance and does not consent to the jurisdiction of this [C]ourt." Id. With the exception of a passing reference to Federal Rule of Civil Procedure 4(k)(1)(A), the body of the amended motion contains no further discussion of personal jurisdiction. See id. at 3-8. Accordingly, the Court will deem the argument abandoned.

7

alternatively asks the Court to stay--rather than dismiss--the case. *Id.* at 15.

"[Al]though state law might in some cases be applied in a diversity action to determine whether a right to arbitrate exists, federal law will preempt state law if the contract underlying a potentially arbitrable dispute evidences a transaction involving interstate commerce." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir. 1985). Specifically, under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1, *et seq.*,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In other words, for the FAA to apply, the Court must find: (1) "an agreement in writing providing for arbitration," and (2) the contract "evidences a transaction involving interstate commerce." *Am. Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir. 1980).

"[T]he mere circumstance of diversity of citizenship . . . is not sufficient to command application of the [FAA]," but neither does the Act "require proof by affidavit or other specific evidence of the nexus to interstate commerce." *Maxum*, 779 F.2d at 978 n.4. "Whe[n] . . . the party seeking

arbitration alleges that the transaction is within the scope of the Act, and the party opposing application of the Act does not [offer] evidence to rebut jurisdiction under the federal statute," a court may properly conclude that the transaction involved interstate commerce. *Id.* Styles is a citizen of Maryland. Compl. ¶ 1. Stringer is an Ohio citizen, and the entity Defendants are Ohio and Nevada companies. *Id.* ¶¶ 2-4, 8. The Agreements granted TC Ohio the exclusive right to print, publish, and sell Styles's works "throughout the world in any and all languages." *Id.*, Ex. 1 at 1(¶ 1), Ex. 2 at 1 (¶ 1). Plainly, the Agreements involve interstate commerce.[9] Both contain written arbitration provisions. *Id.*, Ex. 1 at 8 (¶ 28), Ex. 2 at 8 (¶ 28). Thus, the FAA applies.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party's request to arbitrate an issue should not be denied "unless it

---

[9] *See also* 9 U.S.C. § 1 (defining "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation").

9

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). "[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989).

"Courts have used the distinction between 'broad' and 'narrow' arbitration clauses in determining how to construe the clauses and apply them to the relevant issues." *Branchville Mach. Co. v. Agco Corp.*, 252 F. Supp. 2d 307, 310 (E.D. Va. 2003). A party seeking to avoid arbitration by challenging the validity or enforceability of an arbitration provision must state grounds that "relate specifically to the arbitration clause and not just to the contract as a whole." *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (internal quotation marks omitted).[10] However, this

---

[10] *See Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) (rejecting party's argument that arbitration clause must be declared invalid on grounds that customer's agreement as a whole was invalid due to overreaching, unconscionability, fraud, and lack of consideration, because the alleged defects pertained to the entire contract, as opposed to the arbitration clause specifically); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").

"severability" doctrine "has been held not to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden*, 290 F.3d at 637. But, "[i]f the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (internal quotation marks omitted).

Styles's assent to the Agreements is not in dispute. The Agreements broadly require "[a]ny controversy arising under [them]" to be submitted to arbitration. Compl., Ex. 1 at 8 (¶ 28), Ex. 2 at 8 (¶ 28).[11] Styles's first claim--breach of contract--arises directly under the Agreements and is thus clearly arbitrable. *See J.J. Ryan & Sons, Inc.*, 863 F.2d at 321; Compl. ¶¶ 47-53. Styles's second and third claims, for fraudulent and negligent misrepresentations, allege that Stringer and TC Ohio induced her to sign the Agreements by

---

[11] *Cf. Prima Paint*, 388 U.S. at 398 (labeling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (finding that the scope of a clause providing for arbitration of "[a]ll disputes arising in connection with" a contract was identical to that of a clause providing for the arbitrability of disputes that "may arise out of or in relation to" an agreement and construing the arbitration clause to "encompass a broad scope of arbitrable issues").

11

misrepresenting their intention to pay her royalties. *See* Compl. ¶¶ 54-68. Because these alleged defects pertain to the Agreements generally, as opposed to the Agreements' arbitration clauses, they are also arbitrable. *Prima Paint*, 388 U.S. at 404; *Jeske*, 875 F.2d at 75. Finally, Styles's fourth claim seeks a declaratory judgment that TC Ohio's breach of the Agreements entitles her to "the return of her rights to her Works, which Defendants refuse to acknowledge." Compl. ¶ 77. This cause of action also arises under the Agreements and should similarly be left for an arbitrator's resolution.

Styles does not contend that the arbitration clauses are too narrow to cover the alleged causes of action. *See generally* ECF No. 18 at 14-15. Instead, Styles argues that the provisions are "no longer binding," because TC Ohio's June 2010 dissolution rendered the Agreements terminable,[12] and her subsequent "demands" that the Agreements be terminated caused their termination in fact. *See* ECF No. 18 at 15. The Defendants object that Styles's argument "must be made before the arbitrator and not before the Court." ECF No. 19 at 7. As discussed above, a party who seeks to avoid arbitration by challenging the enforceability of an arbitration provision must

---

[12] Under the Agreements, "[i]f . . . [TC Ohio] liquidates its business for any cause whatsoever, [Styles] may terminate this Agreement by written notice and thereupon all rights granted by h[er] hereunder shall revert to h[er]." Compl., Ex. 1 at 8 (¶ 26(e)), Ex. 2 at 8 (¶ 26(e)).

allege grounds that "relate specifically to the arbitration clause and not just to the contract as a whole." *Snowden*, 290 F.3d at 636 (internal quotation marks omitted). Because Styles's argument addresses the validity of the Agreements, as opposed to the arbitration provisions within them, she has failed to carry this burden.

Styles alternatively argues that, assuming the arbitration provisions remain binding, "no one" has standing to enforce them. ECF No. 18 at 15. Specifically, "TC Nevada and Ms. Stringer are not parties or assignees to the [Agreements]," and TC Ohio "is a legal nullity." *Id.* Under Maryland choice-of-law principles,[13] "'[a]bsent a choice-of-law provision in [a] contract, [Maryland] courts have applied the rule of lex loci contractus to matters regarding the validity and interpretation of contract provisions.'"[14] Here, each of the Agreements provides that, "[t]his Agreement shall be interpreted according to the laws of the State of Ohio." Compl., Ex. 1 at 8 (¶ 29), Ex. 2 at 8 (¶ 29). The parties' choice of law is presumably

---

[13] A federal court exercising diversity jurisdiction must apply the choice-of-law principles of the state in which the federal court is located. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[14] *TIG Ins. Co. v. Monongahela Power Co.*, No. 2842, 2012 WL 6652756, at *9 (Md. Ct. Spec. App. Dec. 21, 2012) (*quoting Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 659 A.2d 1295, 1301 (Md. 1995)).

13

enforceable.[15] Accordingly, Ohio law governs the Defendants' standing to enforce the Agreements' arbitration provisions.

TC Ohio's standing to enforce the arbitration provisions is easily resolved: TC Ohio is an Ohio LLC,[16] and, under Ohio law, its dissolution neither "prevents commencement of a proceeding by or against the company in its name," nor "terminates any contractual rights or obligations of the company." Ohio Rev. Code Ann. § 1705.45(B)(2), (6).[17] TC Nevada and Stringer's standing poses a more difficult question. As a general matter, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf*

---

[15] *See Meena Enters., Inc. v. Mail Boxes Etc.*, No. DKC 12-1360, 2012 WL 4863695, at *6 n.8 (D. Md. Oct. 11, 2012).

[16] Compl. ¶ 2.

[17] Section 1705.45(B) provides, in full:
(B) Dissolution of a limited liability company *does not do any of the following*:
(1) Transfer title to the assets of the company;
(2) Prevent commencement of a proceeding by or against the company in its name;
(3) Abate or suspend a proceeding pending by or against the company on the date of dissolution;
(4) Terminate the authority of the statutory agent of the company;
(5) Unless otherwise provided in the operating agreement, terminate the authority of any manager, officer, or other agent of the company;
(6) Unless the terms of the contract otherwise provide, terminate any contractual rights or obligations of the company.
Ohio Rev. Code Ann. § 1705.45 (emphasis added).

*Navigation Co.*, 363 U.S. 574, 582 (1960). However, "[a] non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract." *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001).[18]

Ohio courts recognize "limited situations" in which a nonsignatory may bind a signatory to an arbitration agreement. *Fields v. Herrnstein Chrysler, Inc.*, No. 12CA827, 2013 WL 772822, at *7 (Ohio Ct. App. Feb. 7, 2013). One such situation was presented in *Fields*. Because the decision is central to the Court's analysis, it will be discussed in some detail.

*Fields* arose from plaintiff Fields's purchase of a new vehicle from defendant Herrnstein Chrysler, Inc. ("Herrnstein Chrysler"). 2013 WL 772822, at *6. The purchase was financed by Capital One Auto Finance, Inc. ("Capital One"), an assignee of Herrnstein Chrysler, under Fields and Herrnstein Chrysler's Retail Installment Sale Contract ("RISC"). *Id.* at *1. Within a few months, Fields noticed paint chipping and peeling on the car. *Id.* at *2. When informal efforts to remedy the problem failed, Fields filed suit against Herrnstein Chrysler; Todd A. Montgomery; Bart Herrnstein; Chrysler Group, LLC; Capital One; and various John Doe finance agents and representatives of

---

[18] *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement.").

Herrnstein Chrysler. *Id.* The named defendants moved to stay and compel arbitration, citing the RISC's arbitration clause and a separately executed Agreement to Arbitrate. *Id.* The motions court ordered to arbitration, *inter alia*, "all claims pending in th[e] action" against defendants Herrnstein Chrysler, Montgomery, Bart Herrnstein, and Capital One. *Id.* at *3.

Fields appealed, arguing--among other things--that the motions court had erred by ordering to arbitration his claims against Montgomery, Bart Herrnstein, and Chrysler Group, LLC, who "were neither parties to the superseding arbitration clause, nor signatories to the arbitration agreement or contracts." *See Fields*, 2013 WL 772822, at *3.

The Ohio Court of Appeals began by discussing traditional principles of equitable estoppel, under which "a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." *Id.* at *5 (internal quotation marks omitted). Although recognizing that the typical estoppel scenario did not apply to the facts at hand, the court emphasized "several" decisions by federal courts of appeals that, under an "alternate estoppel theory,"

> arbitration may be compelled by a nonsignatory against a signatory due to the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.

16

*Id.* (internal quotation marks omitted). "[U]nder this theory, because an individual defendants' [sic] allegedly wrongful acts relate to their [sic] actions as agents of a company that was a party to an arbitration agreement, the nonsignatory agents agents should also have the benefit of the arbitration agreement made by their principal." *Id.*

The court proceeded: "[w]he[n] estoppel has been extended to 'intertwined claims,' it is generally applied in two circumstances: (1) where a signatory must rely on the terms of the written agreement in asserting claims against a nonsignatory and (2) where the signatory alleges substantially interdependent misconduct by both the nonsignatory and one or more signatories to the contract." *Fields*, 2013 WL 772822, at *6. Because Fields's complaint alleged common facts describing each of the defendants as "Defendants Suppliers" whose misconduct led to the litigation, the court concluded his claims were "intertwined" for purposes of the "alternative estoppel theory," and found that the motions court did not abuse its discretion in ordering a stay and referring the claims to arbitration as against the nonsignatories. *Id.* at *7.

Here, as in *Fields*, Styles has alleged common facts describing each of the Defendants as participants in the same course of misconduct: a series of false representations about

their intention to pay her royalties as inducement to enter into two author-publisher agreements with TC Ohio. *See generally* Compl. Stringer--who Styles alleges is the sole owner of the entity Defendants--played an integral role in the course of misconduct, such as by sending Styles the Agreements in the mail. *See* Compl. ¶¶ 4, 8, 11, 13. TC Nevada is equally involved, as TC Ohio purportedly assigned its rights in the Agreements to TC Nevada before TC Ohio dissolved in June 2010. *See id.* ¶ 40. Accordingly, Styles's claims against the Defendants are "intertwined," rendering arbitration as to the nonsignatory Defendants (Stringer and TC Ohio) appropriate. *See U.S. Bank N.A. v. Wilkens*, No. 96617, 2012 WL 892898, at *10 (Ohio Ct. App. Mar. 15, 2012).

Because all of Styles's claims are subject to arbitration, dismissal is warranted.[19]

---

[19] *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." (emphasis in original)) (*quoted in Gibbs v. PFS Investments, Inc.*, 209 F. Supp. 2d 620, 628 (E.D. Va. 2002)); *see also Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986) ("Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.").

C. The Defendants' Request for Attorney's Fees

The Defendants seek "reasonable attorney's fees pursuant to clause 28 of the [A]greement[s]," ECF No. 9-3 at 9, which provides: "*[a]ny controversy* arising under [the] Agreement[s] shall be submitted to arbitration before the [AAA] in Columbus, Ohio in accordance with its rules, and judgment confirming the arbitrator's award maybe [sic] entered in any court of competent jurisdiction. *The prevailing party shall be entitled to receive reasonable attorney's fees*." Compl., Ex. 1 at 8 (¶ 28), Ex. 2 at 8 (¶ 28) (emphases added). The Agreements' requirement to arbitrate is sufficiently broad to cover the issue of attorney's fees. As there has been no arbitration, attorney's fees under the clause are not yet warranted. Thus, the Defendants' request will be denied.

III. Conclusion

For the reasons stated above, the Defendants' amended motion to dismiss will be granted.

7/30/13
Date

William D. Quarles, Jr.
United States District Judge

---

The Court need not address the Defendants' additional arguments that Styles's claims are time-barred and Stringer cannot be sued in her personal capacity. *See* ECF No. 9-3 at 6-8.